UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

PLATINUM DRAGON INTERNATIONAL, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

# COMPLAINT

Plaintiff PLATINUM DRAGON INTERNATIONAL, INC. ("Platinum Dragon" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the caption, which are set forth on Schedule "A" hereto (collectively, the "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Platinum Dragon's trademarks within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs").

2. Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and

intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks, as well as the destruction of the legitimate market sector in which it operates.

3. In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

**JURISDICTION AND VENUE**

4. This is an action seeking damages and injunctive relief for trademark infringement, false designation of origin under the Lanham Act, common law unfair competition; and common law trademark infringement pursuant to 15 U.S.C. §§ 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a).

5. This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1125(a), 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

6. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark claims in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7. Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs. Upon information and belief, Defendants infringe Plaintiff's trademarks in this District by advertising, using, selling, promoting and distributing infringing trademark goods through such Internet based e-commerce stores and fully interactive commercial Internet websites.

8. Venue is proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District. Defendants may be found in this District, as they are subject to personal jurisdiction herein.

## THE PLAINTIFF

9. Plaintiff Platinum Dragon is an Indiana corporation with a principal place of business located in Indianapolis, Indiana.

10. Platinum Dragon is an international licensing company and studio which specializes in worldwide distribution of content, consumer products rights, and brand management. Jon Schaffer is Platinum Dragon's acting CEO. Platinum Dragon is the owner of all rights, title, and interest in the standard character mark "Iced Earth" as well as the following associated logo (collectively, the "Iced Earth Marks"):



11. The Iced Earth Marks are associated with an internationally acclaimed American heavy metal band that has toured and released music under the Iced Earth Marks for over thirty-five (35) years.

12. The discography of Iced Earth consists of thirteen studio releases (twelve original studio albums and one covers album), two live albums, three compilations, five singles, three videos, and eleven music videos.

13. Jon Schaffer, *i.e.*, Plaintiff's CEO, founded the band in 1984 and has been the band's only consistent member to present day. After changing its name to Iced Earth in 1988, the band recorded the demo Enter the Realm (1989), which landed the band a deal with the German label, Century Media Records. One year later, the band recorded the self-titled album Iced Earth, followed by 1991's Night of the Stormrider, which peaked at number 60 on the Japanese Oricon charts. Three years later, Iced Earth released Burnt Offerings followed by The Dark Saga (1996).

14. In 1997, the band re-recorded the best of its early material, and released it as a compilation titled Days of Purgatory. Released in 1998, Something Wicked This Way Comes reached number 19 on the German Media Control Charts. The band followed up with the live album Alive in Athens (1999). In 2001, the band released its sixth full-length album, Horror Show—which reached the top 30 on the Austrian Ö3 Top 40 and German charts—and later that year, the five-disc box set Dark Genesis, which contained remastered versions of the first three studio albums, the demo Enter the Realm, and seventh studio album, titled Tribute to the Gods.

15. Two years later, Iced Earth signed a deal with the record label SPV, and hired singer Tim "Ripper" Owens (the former lead singer for Judas Priest) to record vocals for The Glorious Burden. The album reached the top 30 in Austria, Finland and Germany. For the first time, the band charted on the American Billboard 200, at number 145.

16. Between 2007 and 2008, the band released two concept albums for the conclusion of the Something Wicked saga. The first part, titled Framing Armageddon (2007), reached the top 30 on the German and Swedish Sverigetopplistan charts. The following year, the band released the second part The Crucible of Man, which reached the top 40 on the Austrian, Finnish, German, and Swiss charts.

17. Between 2011 and 2017, the band released three albums, Dystopia, Plagues of Babylon, and Incorruptible. All three albums reached the top 100 on the U.S. charts, with the latest album, Incorruptible, peaking at number 42 on the U.S. charts.

18. Iced Earth are now one of the most famous groups in the North American metal scene. And for a good reason: apart from the objective quality of their productions, they were among the first bands to merge European old school power metal with American-style thrash metal.

19. In addition to touring and releasing music under the Iced Earth Marks, the Iced Earth Marks are sold in connection with various goods and merchandise, including but not limited to T-shirts, outerwear, skateboard decks, face masks, and posters.

20. Goods bearing and reproducing the Iced Earth Marks are sold through authorized retailers throughout the United States, including within the State of Florida and this District.

21. Genuine and authorized products bearing and reproducing the Iced Earth Mark are widely legitimately advertised, promoted, and distributed by and through Platinum Dragon and its

authorized partners, including but not limited to Amazon. Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to Platinum Dragon's overall marketing and consumer education efforts. Thus, Platinum Dragon expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow Platinum Dragon and its authorized partners to educate consumers fairly and legitimately about the value associated with the Iced Earth brand.

## THE DEFENDANTS

22. Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities towards consumers throughout the United States, including within this district through the operation of Internet based e-commerce stores via Internet marketplace websites under the Seller IDs.

23. Defendants are the past and present controlling forces behind the sale of products under infringements of Plaintiff's trademarks as described herein using at least the Seller IDs.

24. Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and additional seller identification aliases and domain names not yet

known to Plaintiff. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

25. Defendants have registered, established or purchased, and maintained their Seller IDs. Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs.

26. Upon information and belief, some Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal activities.

27. Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

28. Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

29. Defendants' business names, *i.e.*, the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of infringing goods bearing one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's famous trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## GENERAL FACTUAL ALLEGATIONS

### *Platinum Dragon's Intellectual Property Rights*

30. The Iced Earth Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified above.

31. Long before Defendants began their infringing activities complained of herein, the Iced Earth Marks have been used by Plaintiff in interstate commerce to identify and distinguish Plaintiff's brand and associated merchandise for an extended period.

32. The Iced Earth Marks are well-known and famous and have been for many years. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Iced Earth Marks and products bearing the Iced Earth Marks. The Iced Earth Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

33. Plaintiff has extensively used, advertised, and promoted the Iced Earth Marks in the United States in association with its heavy metal band and associated merchandise.

34. As a result of Plaintiff's efforts, members of the consuming public readily identify products and merchandise bearing or sold under the Iced Earth Marks as being high quality goods sponsored and approved by Plaintiff.

35. The Iced Earth Marks serve as symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

### *Defendants' Infringing Conduct*

36. Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale infringing goods in interstate commerce using exact copies and confusingly similar copies of the Iced Earth Marks through at least the Internet based e-commerce stores operating under the Seller IDs (collectively, the "Infringing Goods"). Plaintiff

has used the Iced Earth Marks extensively and continuously before Defendants began offering confusingly similar imitations of Plaintiff's merchandise.

37. Upon information and belief, Defendants' Infringing Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Infringing Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Iced Earth Marks despite Defendants' knowledge that they are without authority to use the Iced Earth Marks. The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Infringing Goods are genuine goods originating from, associated with, or approved by Plaintiff.

38. Defendants advertise their Infringing Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs. In so advertising these goods, Defendants improperly and unlawfully use one or more of the Iced Earth Marks without Plaintiff's permission.

39. As part of their overall infringement scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of confusingly similar infringements of the Iced Earth Marks. Specifically, Defendants are using confusingly similar infringements of Plaintiff's famous Iced Earth Marks in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for

Plaintiff's genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Iced Earth Marks, and/or (iii) increasing Plaintiff's overall cost to market the Iced Earth Marks and educate consumers about its brand via the Internet.

40. Upon information and belief, Defendants are concurrently targeting their infringing activities toward consumers and causing harm within this District and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

41. Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Iced Earth Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

42. Defendants' use of the Iced Earth Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Infringing Goods, is without Plaintiff's consent or authorization.

43. Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants' intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

44. Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Infringing Goods, which there is not.

45. Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing and unfairly competitive activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

46. Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

47. Plaintiff has no adequate remedy at law.

48. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Iced Earth Marks.

49. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Infringing Goods.

**COUNT I – FALSE DESIGNATION OF ORIGIN
PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

50. Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51. Upon information and belief, Defendants' Infringing Goods bearing, offered for sale, and sold under copies of one or more of the Iced Earth Marks have been widely advertised and offered for sale throughout the United States via the Internet.

52. Defendants' Infringing Goods bearing, offered for sale, and sold under copies of one or more of the Iced Earth Marks are virtually identical in appearance to Plaintiff's genuine

goods. However, Defendants' Infringing Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Infringing Goods.

53.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Infringing Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

54.     Defendants have authorized infringing uses of one or more of the Iced Earth Marks in Defendants' advertisement and promotion of their infringing branded goods. Defendants have misrepresented to members of the consuming public that the Infringing Goods being advertised and sold by them are genuine, non-infringing goods.

55.     Additionally, Defendants are using infringements of the Iced Earth Marks in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

56.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

57.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court,

Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT II – COMMON LAW UNFAIR COMPETITION

58. Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

59. This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both visually and phonetically, to one or more of the Iced Earth Marks in violation of Florida's common law of unfair competition.

60. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing infringements of the Iced Earth Marks. Defendants are also using infringements of the Iced Earth Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

61. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Iced Earth Marks.

62. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT

63. Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

64. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Infringing Goods bearing one

or more of the Iced Earth Marks. Plaintiff is the owner of all common law rights in and to the Iced Earth Marks.

65.     Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the Iced Earth Marks.

66.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' Infringing Goods bearing the Iced Earth Marks.

67.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Infringing Goods; from infringing, counterfeiting, or diluting the Iced Earth Marks; from using the Iced Earth Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff,

through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any counterfeit or colorable imitation of the Iced Earth Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's Iced Earth Marks; and from otherwise unfairly competing with Plaintiff.

      B.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Iced Earth Marks.

      C.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

D. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the Iced Earth Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the Iced Earth Marks associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Iced Earth Marks.

E. Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117.

F. Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

G. Entry of an award pursuant to 15 U.S.C. § 1117(a) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

H. Entry of an order requiring Defendants to pay prejudgment interest according to law.

I. Entry of an order for such other and further relief as the Court may deem proper and just.

Date: January 10, 2021

Respectfully submitted by,

THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue
South Tower, Suite 800
Miami FL, 33131
Tel: 305-728-8831
Fax: 305-428-2450

By:   s/ *Richard Guerra*
Richard Guerra
Fla. Bar No. 689521
Email: rguerra@brickellip.com
Rafael Perez-Pineiro
Fla. Bar No. 543101
Email: rperez@brickellip.com
Nicole Fundora
Fla. Bar No. 1010231
Email: nfundora@brickellip.com
*Counsel for Plaintiff*